UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): 13-1117                                          Caption [use short title]

Motion for: Certificate of Appealability                          WALKINS CONTRERAS,
                                                                      Petitioner,
Set forth below precise, complete statement of relief sought:     -against-

Motion for certificate of appealability from order                DALE ARTUS, Superintendent,
                                                                      Respondent
dismissing petitioner's application for a writ of habeas

corpus under 28 U.S.C.§2254

MOVING PARTY: Walkins Contreras                                   OPPOSING PARTY: Dale Artus

☐ Plaintiff              ☐ Defendant
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Andrew C. Fine                                  OPPOSING ATTORNEY: Alyson J. Gill, Barbara Underwood

[name of attorney, with firm, address, phone number and e-mail]

The Legal Aid Society, Criminal Appeals Bureau                    New York State Attorney General's Office
199 Water Street, 5th floor                                       120 Broadway, 12th Floor
New York, NY 10038                                                New York, NY 10271
(212) 577-3440, afine@legal-aid.org                               (212)416-6037, Alyson.Gill@ag.ny.gov

Court-Judge/Agency appealed from: US District Court, SDNY, Hon. Jed S. Rakoff, District Judge

Please check appropriate boxes:                                  FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                                 INJUNCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):   Has request for relief been made below?                ☐ Yes ☑ No
   ☑ Yes ☐ No (explain):                                             Has this relief been previously sought in this Court?    ☐ Yes ☑ No
                                                                     Requested return date and explanation of emergency:

Opposing counsel's position on motion:
   ☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
   ☐ Yes ☐ No ☑ Don't Know

Is oral argument on motion requested?          ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?          ☐ Yes ☑ No  If yes, enter date:

Signature of Moving Attorney:
_____ Date: May 3, 2013      Service by: ☑ CM/ECF      ☐ Other [Attach proof of service]

## ORDER

IT IS HEREBY ORDERED THAT the motion is **GRANTED DENIED**.

                                                FOR THE COURT:
                                                CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____          By: _____

Form T-1080 (rev. 7-12)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
---------------------------------------------------------------------x

WALKINS CONTRERAS,                                    :

        Petitioner,                              :

        -against-                                :

DALE ARTUS, Superintendent, Clinton Correctional     :
Facility,

        Respondent.                              :
---------------------------------------------------------------------x

**Case No. 13-1117**
AFFIRMATION IN
SUPPORT OF MOTION
FOR A CERTIFICATE
OF APPEALABILITY

      ANDREW C. FINE, an attorney admitted to practice law in this Court, hereby affirms under the penalties for perjury that the following statements are true, except as to those made on information and belief, which he believes to be true:

      1. I am associated with The Legal Aid Society of New York City, which was assigned to represent petitioner on his direct appeal in state court, both in the Appellate Division and in the Court of Appeals. Our office also represented petitioner before the Southern District on this petition. I am fully familiar with all of the prior proceedings in state and federal court.

      2. Counsel for petitioner now moves for a Certificate of Appealability from the District Court's order (Rakoff, D.J.), dated March 4, 2013, dismissing petitioner's petition under 28 U.S.C. §2254 for a writ of habeas corpus. That order adopted, in its entirety, the Report and Recommendation of Magistrate Judge Frank Maas, dated September 11, 2012, recommending that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied. On April 26, 2013, Judge Rakoff issued a handwritten order denying petitioner's application for a Certificate of Appealability.

1

3. We seek permission from this Court to raise both issues that we raised in the District Court: (1) the New York Court of Appeals unreasonably applied United States Supreme Court right-to-counsel precedent by affirming the trial-long ban on communication between defense counsel and petitioner regarding the subject of a potentially relevant and mitigating Note found in the complainant's apartment after the crimes were allegedly committed there; and (2) petitioner was denied his right to be present, in violation of due process and confrontation, when he was excluded during an in camera examination of the complainant regarding the Note in question, during which the complainant previewed substantive testimony about the incident.

4. Based on the complaint of Yvelisse Aybar, petitioner Walkins Contreras was charged with first-degree rape, second-degree kidnapping, first-degree burglary, and related offenses, arising out of an incident that she claimed took place in Manhattan on February 10, 2004. The complainant alleged that Mr. Contreras, her husband, forced his way into their apartment, raped the complainant, held her and her son against their will for several hours, and choked her before voluntarily stopping. Mr. Contreras was eventually convicted of the above-mentioned offenses and also attempted assault in the first degree, two counts of unlawful imprisonment in the first degree, and endangering the welfare of a child. He was sentenced to concurrent terms of 20 years on the rape, burglary, and kidnapping counts, and lesser concurrent terms on the remaining convictions.

5. At trial, the court, citing New York's Rape Shield Law, precluded the defense from making use of statements contained in a Note found at the scene, and shown by the prosecutor to the court. The Note contained four handwritten bullet points: (1) "I want you to open yourself more to me;" (2) "acknowledge me in bed when you are sleeping (even though you are getting better)," (3) "take me and fuck the shit out of me;" and (4) "get tested for."

2

6. The court decided to exclude the Note. Before doing so, it took the following actions. First, the judge spoke to the prosecutor about it, excluding both petitioner and his attorney. At this time, he determined that the Note was not relevant and excludable under the Rape Shield Law.[1] Next, the trial judge questioned the complainant about the Note's relevance, again excluding both petitioner and his attorney. Third, the court then permitted defense counsel to see the Note, but ordered him to reveal neither the substance of the in camera hearing nor the contents of the Note to petitioner. This communication ban lasted throughout the entire trial. The court advised defense counsel that it was excluding the Note on relevance and Rape Shield Law grounds. Only then was defense counsel allowed to argue that the Note should be admitted and question the complainant about her knowledge of it: once again, in petitioner's absence.

7. During the complainant's in camera testimony, she said that the Note was intended for her new boyfriend, not petitioner. She said that she did not know if petitioner saw it, but admitted that it was possible that petitioner saw the Note during the incident; she said that when petitioner entered the apartment, the contents of her purse, including the Note, fell to the floor.[2]

8. Defense counsel argued that the Note should be admitted because it supported the defense position that petitioner was invited into the marital home, thus ruling out the burglary charges. Nevertheless, the Note was excluded without any contribution by petitioner and defense counsel was permanently prohibited from discussing the Note with petitioner.

9. On January 3, 2008, the Appellate Division, First Department affirmed the judgment of conviction. People v. Contreras, 47 A.D.3d 411. It found that the communication ban was

---

[1] The Rape Shield Law ruling was rejected by the Appellate Division. People v . Contreras, 47 A.D.3d 411 (1st Dept. 2008) ("the Note reflected the victim's statements about herself, and thus was not evidence of her 'sexual conduct' within the meaning of the statute").

[2] The complainant testified in camera that "I just know that a lot of things fell out but I didn't, I'm not sure where he put it, if he saw it." When asked by defense counsel if it was possible that petitioner saw it, she responded, "I am not sure about what was going through his mind however."

3

justified because the court had "a legitimate interest in protecting the victim from an unnecessary invasion of her privacy." It concluded that petitioner had no right to be present at the in camera hearing with the complainant because "there was no indication that defendant had any knowledge of the Note's existence," and therefore he could not have contributed in any meaningful way to the proceedings. Though it rejected the trial court's reliance on the Rape Shield Law, it held that the Note was irrelevant.

10. Associate Judge Eugene F. Pigott of the New York Court of Appeals granted permission to appeal on June 10, 2008. 10 N.Y.3d 933. On April 7, 2009, the Court of Appeals affirmed. People v. Contreras, 12 N.Y.3d 268. It concluded that in light of the Note's "apparent irrelevance to the case," petitioner had no right to any hearing to determine whether it related to the case or was exculpatory. Id. at 272. Ignoring petitioner's forced exclusion from all proceedings regarding the Note, the Court concluded that there was "no reason to doubt that [the Note was] exactly what the complainant said [it was]: [a Note] written at a different time on another subject. There was "no evidence that defendant ever saw [it], much less that [it] motivated his conduct." Id. The document "was both irrelevant and potentially inflammatory," id. at 273, justifying the trial judge's decision to prevent petitioner from learning about it by excluding him from the proceedings regarding it and prohibiting counsel from discussing the subject with him throughout the trial. The opinion also concludes that the Note, "though irrelevant to the case, had a significant tendency to embarrass the complainant." Id.

11. Petitioner timely filed an application for a writ of habeas corpus in the Southern District of New York, and a supporting Memorandum of Law, in which he argued that: (1) the trial-long communication ban violated his Sixth Amendment right to counsel and that the New York Court of Appeals unreasonably applied clearly established Supreme Court precedent

(Geders v. United States, 425 U.S. 80 (1976), and Perry v. Leeke, 488 U.S. 272 (1989)), in rejecting that claim; and (2) his exclusion from proceedings held to determine the admissibility of the Note, during which the complainant previewed critical aspects of her trial testimony regarding the alleged incident, violated his rights to confrontation and due process, and unreasonably applied Supreme Court precedent regarding those issues. An opposing Memorandum of Law was filed by the State, and petitioner filed a Reply.

12. On September 11, 2012, Magistrate Judge Frank Maas issued a Report and Recommendation to United States District Judge Jed S. Rakoff, recommending that the petition be denied.

13. The Magistrate Judge acknowledged that the trial court's ban on attorney-client consultation "far surpassed the length of the bans in prior cases." R & R at 19. He opined, however, that it was "unclear" that Geders v. United States, 425 U.S. 80, holding that an overnight ban on consultation between a testifying defendant and his attorney deprived the defendant of his right to the assistance of counsel, "applies at all where, as here, the defendant elects not to testify." R & R at 19. The Magistrate Judge determined that in any event, based on the trial judge's findings -- made without permitting Contreras any input -- "the Note was irrelevant to any issues that the jury would be asked to consider." Id. at 20. Elaborating, the Magistrate Judge wrote: "[R]equiring Defense Counsel to refrain from discussing the Note with Contreras was no more of an impediment to the defense than requiring that Defense Counsel not discuss with Contreras a work by Shakespeare that Contreras had not read." Id. Of course, the Magistrate Judge's assumption that Contreras had not read the Note was not shared by the complainant herself. See p. 3 and fn. 2 of the accompanying Memorandum of Law.

5

14. Regarding petitioner's presence claim, the Magistrate Judge minimized the significance of the complainant's testimony about the incident at the in camera hearing, stating that "the hearing transcript confirms that the focus of the in camera hearing was the Note." Id. at 22-24. But the portions of the transcript quoted by the Magistrate Judge confirm that in response to defense counsel's questioning, the complainant discussed petitioner's having allegedly pushed her and her child inside her apartment, causing her purse to fall to the floor; that petitioner tried to get information from her about her boyfriend; and that petitioner told her that he was upset about this relationship. Id. at 23-24.

15. The Magistrate Judge recommended rejection of the presence claim based on the same unsupported premise that petitioner knew nothing about the Note: "Contreras could not have meaningfully contributed to his attorney's questions and legal arguments concerning a Note about which he had no knowledge." Id. at 24. He also wrote that the testimony about the incident "was repeated in [petitioner's] presence at trial." Id. at 24-25. He concluded that petitioner did not show "that his presence would have improved his chances of defending himself against the crimes charged." Id. at 25.

16. Finally, the Magistrate Judge wrote that neither of petitioner's claims amounted to structural error, and that "the decision of the New York Court of Appeals that any error … was harmless" was not contrary to, or an unreasonable application of, Supreme Court precedent. Id. at 27. In fact, however, the Court of Appeals never addressed harmless error.

17. After petitioner submitted extensive objections to the Magistrate Judge's Report and Recommendation, the District Court (Rakoff, J.), on March 4, 2013, adopted the R & R in its entirety, and therefore dismissed the petition. On April 26, 2013, Judge Rakoff denied a Certificate of Appealability, on the ground that "the alleged error, if any, was plainly harmless."

6

18. For the reasons stated in the accompanying Memorandum of Law, the motion for a Certificate of Appealability should be granted.

ANDREW C. FINE

Dated: New York, New York
       May 3, 2013

## MEMORANDUM OF LAW

### A CERTIFICATE OF APPEALABILITY SHOULD BE GRANTED REGARDING BOTH ISSUES RAISED BY PETITIONER AT THE DISTRICT COURT.

#### Standard Of Review

When a petitioner in custody pursuant to a State court judgment raises "any claim that was adjudicated on the merits in State court proceedings" as a basis for federal habeas relief, a federal court may grant relief only if the "adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012). The standard for granting a COA, however, is less rigorous: the petitioner must demonstrate only that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 334 (2003).

**Introduction: The District Court's determination that the complainant's Note that fell to the ground during the incident was irrelevant should be rejected, because it failed to take into account that the court prohibited petitioner from participating in the assessment.**

Regarding both constitutional issues raised by petitioner, the Magistrate Judge's Report and Recommendation, adopted by the District Judge, makes the same fundamental mistake the state courts did: it evaluates the Note with blinders on, accepting the State's assessment of the Note at face value, without considering the impact of petitioner's exclusion from the evaluation process. Had the court permitted petitioner to participate, by allowing him to discuss the Note with counsel and to be present at the in camera proceedings at which the complainant testified about the incident, his potential input would likely have altered the court's evaluation of the Note's importance. The court, however, excluded petitioner from the in camera proceedings and prohibited any conversation about the Note between him and his attorney throughout the entire trial.

When the Note's *potential* importance to the defense is considered, as it should have been, it is clear that the court's trial-long ban on attorney-client consultation regarding the Note was an unjustified deprivation of petitioner's right to counsel. Since such an improper consultation ban is structural error, Perry v. Leeke, 488 U.S. 272, 278-280 (1989), the writ should be granted on that basis alone. Similarly, had petitioner been permitted to attend the in camera proceedings at which the complainant was questioned about the incident, his potential to make a meaningful contribution to the defense is clear, rendering his court-ordered exclusion a violation of his right to be present. The state courts' rejection of these claims on the merits is manifestly unreasonable, 28 U.S.C. §2254(d)(1), and that rejection was also based on an unreasonable determination of the facts. 28 U.S.C. §2254(d)(2). Certainly, it cannot be said that "reasonable jurists would not find the district court's assessment of the constitutional claims

8

debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 334 (2003). A Certificate of Appealability should therefore be granted.

## I. The Improper Trial-Long Ban on Consultation Between Petitioner and His Attorney Regarding the Note

The District Court acknowledges that the trial-long consultation ban at issue "far surpassed the length of the bans in prior cases," noting that in Geders v. United States, 425 U.S. 80 (1976), the Supreme Court held that an overnight ban on all communications between a defendant undergoing cross-examination and his attorney violated the defendant's right to counsel. R & R at 19. It states, however, that it is "unclear ... whether Geders applies at all where, as here, the defendant elects not to testify." R & R at 19. Such an interpretation is incompatible with Geders' reasoning.

The Geders Court reached its result even though it acknowledged that the policy behind the ban -- the trial court's fear that counsel would "coach" the defendant regarding the remainder of cross -- was a *legitimate* one. 425 U.S. at 88-91. But it ruled that the ban was unconstitutional because it was overbroad: it prohibited consultation between attorney and client about important and entirely legitimate topics unrelated to the defendant's testimony. Id. at 88-89. Defendant's status as a witness undergoing cross-examination, in other words, was a fact that militated *against* his position on appeal. The Court ruled that the defendant was entitled to consult with his attorney during the overnight period *in spite of* his status as a testifying witness, not because of it. Had defendant not testified, the Court's decision would have been reached without having to balance these competing concerns:

> [T]he Petitioner was not simply a witness; he was also the defendant. A sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial. A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial.

9

Id. at 88.

The District Court next determined that the "constitutional quality" of the prohibition of consultation justified the trial court's order that counsel never discuss the Note with petitioner, because "the Note was irrelevant to any issues that the jury would be asked to consider." R & R at 19-20. But the District Court, as well as the New York state courts, reached this conclusion without taking into account the obvious ways in which petitioner, who was excluded from the decision-making process, could have provided critical information about the Note's significance. Such "Catch-22" illogic illustrates why the Supreme Court, in deciding issues related to the legitimacy of bans on consultation and defendant's presence, has focused on the *potential* significance of the defendant's participation, rather than requiring the defendant to establish its *actual* significance without providing the defendant with the means to do so. It also demonstrates the unreasonableness of the state courts' factual determination that the Note was irrelevant: an independent basis for granting the writ. See 28 U.S.C. §2254 (d)(2); see generally Miller-El v. Dretke, 545 U.S. 231 (2005); Wiggins v. Smith, 539 U.S. 510 (2003).

Thus, in Geders, the Supreme Court did not conduct a case-specific examination of the importance of consultation. Instead, it recognized the potential importance that attorney-client communication during an overnight recess would normally have in a criminal trial, noting that "such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed," and that the recess "gives the defendant a chance to discuss with counsel the significance of the day's events." Id. at 88. And in Perry v. Leeke, the Court explicitly decided that "a showing of prejudice is not an essential component of a violation of the rule announced in Geders," 488 U.S. at 278-9, because "[a]ctual or constructive denial of the assistance of counsel altogether" is qualitatively different than evaluating "whether the quality of a lawyer's performance itself has been

10

constitutionally ineffective." Id. at 280, quoting from Strickland v. Washington, 466 U.S. 668, 692 (1984). In light of Perry, the District Court's declaration that "the Supreme Court has never ... held, nor ... suggested that either of the wrongs alleged in Contreras' Petition ... gives rise to a structural error, " R & R at 27, is simply wrong.[3]

When determining in Perry that the consultation ban during a 15-minute break in the defendant's testimony did not violate his right to counsel, the Supreme Court relied on the trial judge's authority to prevent a discussion of the ongoing testimony, and then focused upon the absence of any real potential for a legitimate attorney-client discussion to have occurred. It noted that the brevity of the recess practically guaranteed that "any conversation" between defendant and his attorney would "relate to the ongoing testimony." 488 U.S. at 283-284. In the context of a longer recess, by contrast, "normal consultation" would "encompass matters ... that the defendant does have the constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain." Id. at 284.

In contrast to Perry, the *potential* importance of the Note at issue at petitioner's trial, and the substantial likelihood that petitioner could have helped counsel to develop its significance, is clear. First, even if the complainant's in camera testimony is fully credited, and she wrote the Note for her new boyfriend rather than petitioner, she acknowledged that the contents of her purse, including the Note, had fallen to the floor when petitioner entered the apartment, and that petitioner may have read the Note. If he did so, the Note's graphic discussion of the complainant's sexual relationship with her current boyfriend could have enraged petitioner and been the motivation behind the alleged

---

[3] The R & R incorrectly states that petitioner argued merely that both constitutional violations, when considered cumulatively, are not subject to harmless error scrutiny. R & R at 26-27. In fact, petitioner argued quite directly, based on Perry, that the violation of petitioner's right to the assistance of counsel stemming from the court's improper ban on attorney-client consultation was itself immune from prejudice analysis. Pet. Mem. at 25. Petitioner made the same argument regarding the violation of his right to be present. Pet. Mem. at 45-47.

11

sexual assault, even if he had no unlawful intent at the time he entered her apartment.[4]  In that way, the Note could have weakened the State's proof of burglary.

Also, the jury would have been entitled to discredit the complainant's in camera testimony that the Note related to a new boyfriend, rather than petitioner, and petitioner could well have provided insight into that critical question. This possibility, apparently, did not occur to the Magistrate Judge, who did not address it in the R & R. The complainant testified that she and petitioner had a stormy on-again, off-again relationship, and petitioner, of course, was in a position to know whether the details of the sexual liaisons to which the complainant referred in the Note were consistent with his memory of their relationship. Had defense been allowed to utilize the Note with petitioner's assistance, the jury could have readily concluded that the Note related to petitioner, and that the encounter at issue, like those described in the Note, was consensual.

Indeed, both the prosecutor and the trial court understood this. In requesting the in camera proceeding, the prosecutor acknowledged that the Note could support a defense argument  that the complainant had consented and "chang[ed] her mind after the fact" (155: Dist. Ct. Appendix at 13). And the judge made it clear that if petitioner testified and referred to the Note himself, he would revisit his ruling banning consultation (198-199; District Ct. Appendix at 33-34).

Notwithstanding the trial court's recognition of the potential importance of the Note, it accepted the prosecutor's argument that informing petitioner of its existence and contents would have given petitioner "ammunition," enabling petitioner to "create ... evidence" (198; Dist. Ct. Appendix at 33). But the premise of this argument is contradicted by Geders, in which the Supreme

---

[4]  The court was well aware that it was creating an insurmountable obstacle for the defense by prohibiting counsel from consulting with petitioner about the Note. When counsel discussed the possible effect of petitioner's having read the Note while inside the complainant's apartment, the court responded, "Assuming he read it" (198; Dist. Ct. Appendix at 33). The prosecutor chimed in, saying "[t]here is no evidence that he read it," leading defense counsel to respond, "There is no evidence at all. What do you mean there's no evidence that he read it?" (Id.). But the court continued, "Well, the answer is you can't give it to him so he will create the evidence" (Id.)

Court held that to the extent there may be a conflict between the defendant's right to counsel and the risk of "coaching" or "tailored" testimony, "the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance of counsel." 425 U.S. at 91. The District Court's approval of the New York courts' reliance on the potential for embarrassment to the complainant as a justification for the ban on attorney-client consultation, see R & R at 13, must be rejected for the same reason. See Geders, 425 U.S. at 91; cf. Davis v. Alaska, 415 U.S. 308, 319-320 (1974) (a defendant's right to cross-examine prosecution witness outweighed state's interest in protecting the complainant's anonymity as a juvenile offender). Any possibility of embarrassment to the complainant here cannot justify depriving petitioner of his right to consult with his attorney about a matter potentially critical to his defense.

Finally, the District Court concluded, as did the state Appellate Division, that petitioner would have told counsel about the Note had he been aware of its existence. R & R at 20. Once again, this reasoning flies in the face of Geders. The Supreme Court recognized that without counsel, a criminal defendant "is ill-equipped to understand and deal with the trial process," 425 U.S. at 88, since he "lacks both the skill and the knowledge adequately to prepare his defense. ... He requires the guiding hand of counsel at every step in the proceedings against him." Id. at 89. Petitioner may have lacked the legal knowledge to assess how the Note would be relevant to the charges against him.[5] The District Court's view that petitioner also could have supplemented the record by revealing his knowledge of the Note during the state appellate and/or collateral process or the habeas process, see R & R at 20-21, is equally unavailing. Such information would, in fact, be legally irrelevant under Geders and Perry, which, as we have demonstrated, focus on the *potential* benefits of consultation, and reject the applicability of prejudice analysis.

---

[5] Thus, the Magistrate Judge is wrong in asserting that the only "conceivable circumstance" in which the ban on consultation "might have been prejudicial" is "if Contreras read the Note on the date of the incident, but later forgot that he had done so." R & R at 20.

13

The trial-long ban on any communication between petitioner and his attorney regarding the Note deprived petitioner of his Sixth Amendment right to counsel, and is incompatible with Geders and Perry. The state courts' rulings rejecting this argument are, at the very least, unreasonable applications of those decisions, and their factual determinations that the Note was irrelevant are unreasonable as well, since the court prevented petitioner from contributing to the evaluation process. None of the District Court's rationalizations for those rulings is analytically defensible. Moreover, the District Judge's reliance on harmless error as an alternative ground for denying a COA contravenes the Supreme Court's holding in Perry v. Leeke, 488 U.S. at 278-280. At the very least, "reasonable jurists" would find the District Court's rationale "debatable or wrong," Miller-El v. Cockrell, 537 U.S. at 334, and this Court should therefore grant a Certificate of Appealability.

## II. The Improper Exclusion of Petitioner from Proceedings Where the Complainant Was Questioned About the Note and Its Potential Relevance to the Incident

The District Court's rejection of petitioner's argument that the trial court violated his right to be present by excluding him from the conferences during which the complainant was questioned about the incident, and the Note's bearing on it, suffers from the same fundamental logical flaw as does its rejection of petitioner's right-to-counsel claim: it accepts the state court's conclusion that the Note was irrelevant to justify the exclusion of the only person other than the complainant who could have provided insight into its relevance. It also ignores (1) the complainant's acknowledgment that petitioner may have read the Note during the incident, (2) her admission that petitioner had told her that day that he was upset about her having had, or contemplated, a relationship with another man (Dist. Ct. Appendix, at 22, 40-41), and (3) the possibility that the complainant was incorrect in asserting that the Note referred to her boyfriend, rather than petitioner: a possibility that, if correct, could have supported the conclusion that the encounter that day was consensual in nature.

According to the District Court, petitioner's presence claim fails because he did not establish that his presence "would have improved his chances of defending himself." R & R at 25. Petitioner, the District Court averred, "could not have meaningfully contributed to his attorney's questions and legal arguments concerning a Note about which he had no knowledge." R & R at 24. This sets an impossible bar, requiring petitioner to demonstrate that he would have contributed to proceedings regarding a matter that he was prohibited from discussing with counsel.

The Supreme Court has not required such a showing. Analysis of the legitimacy of the exclusion of a criminal defendant from court proceedings, like that relating to the constitutionality of a ban on consultation between the defendant and his attorney, focuses on whether there is a significant *possibility* that the defendant *could have* made a meaningful contribution to his defense had he been allowed to participate. In United States v. Gagnon, 470 U.S. 522, 527 (1985), for example, the Court focused its inquiry on whether the defendant "*could* have done [anything] had [he] been at the [hearing], [or] would ... have gained anything by attending." And in Snyder v. Massachusetts, 291 U.S. 97, 108 (1934), in determining that the exclusion of the defendant from a jury view of the crime scene was not improper, the Court concluded that "[t]here is nothing he *could* do if he were there, and almost nothing he *could* gain."

Applying these Supreme Court precedents, this Court, in Grayton v. Ercole, 691 F.3d 165, 172 (2d Cir. 2012), rejected the state's argument that the habeas petitioner should be required to demonstrate that his presence at a hearing to determine whether he had engaged in misconduct that procured a witness's absence, thereby forfeiting his right to cross-examine, "would have been able to meaningfully assist his counsel in cross-examining the witnesses who testified at the hearing":

> No such individualized showing is required, however, in this circumstance: a defendant's presence will *always* contribute to the fairness of [such] a ... hearing because it ensures a more reliable determination of whether the defendant's alleged

15

> misconduct procured the witness's absence. In every case in
> which [such] a ... hearing is held, the defendant will be in a
> unique position to know whether he -- or someone else on his
> behalf -- has in fact threatened a witness and the circumstances
> surrounding that misconduct if it occurred.

The record here similarly demonstrates the *potential* for petitioner to have made a
meaningful contribution to the proceedings during which his attorney examined the complainant: the
complainant's testimony established that petitioner was present when she dropped her purse and the
Note fell out, that he could have read it, and that he had indicated during the incident that he was
upset that she had been having, or contemplating, a relationship with another man (App. 40). As
discussed earlier (see p. 5, *ante*), this would have increased the likelihood that his entry into the
complainant's apartment was authorized by her, and that his discovery of the Note was responsible
for any later sexual assault. It is also obvious that, because he was familiar with their sexual
relationship, petitioner could have contributed to a determination regarding whether the Note, as
complainant alleged, was written about her new boyfriend, or whether, in fact, she had been
describing her relationship with petitioner. If the latter were true, it would have substantially
weakened the State's claim that a sexual assault occurred, and increased the possibility that any
sexual activity between petitioner and complainant that day was consensual.

The R & R, however, maintains that petitioner "could not have meaningfully contributed to
his attorney's questions and legal arguments concerning a Note about which he had no knowledge."
Id. at 24. Once again, the District Court assumes petitioner's ignorance about a matter that he was
prohibited from discussing. That simply makes no sense.

The District Court also avers that the trial court had originally intended the scope of the in
camera proceedings to be limited to an examination of the complainant about "the Note," but that
defense counsel undertook a "limited inquiry into subjects other than the Note that mirrored the

16

[c]omplainant's trial testimony." R & R at 23-24. He concludes that these "snippets" of additional

testimony in petitioner's absence did not prejudice him, because they were "irrelevant to the subject

matter of the hearing and ... repeated in his presence at trial," and any possible contribution from

petitioner is based on "sheer speculation." Id. at 25. The District Court failed to recognize that the

in camera proceedings, in fact, related *exclusively* to the complainant's narrative about the

circumstances underlying the charged crimes -- thereby entitling petitioner to be present -- and that

any expansion of the scope of the proceedings further increased the potential for petitioner to have

been able to contribute meaningfully both to the judge's assessment of the materiality of the Note,

and to the effectiveness of the eventual cross-examination of the complainant before the jury.

The District Court's description of the purpose of the proceedings understates their

significance. If the police had merely found the Note in the complainant's purse after the incident,

without any evidence that its contents could have been viewed by petitioner, the prosecutor would

not have requested a judicial inquiry by the court. What the prosecutor realized was the possibility --

acknowledged as such by the complainant -- that petitioner could have observed the Note *during the*

*incident*, since the complainant agreed that it had been in her purse, the contents of which spilled out

following petitioner's entry. The ensuing inquiry involved the possibility that the Note played a

role in petitioner's behavior after his entry, and that it could have shed light on the reason why he

entered. Accordingly, *all* of the questioning of the complainant at the preliminary proceedings, both

by the court and by counsel, dealt not merely with "the Note," but with the circumstances underlying

the charges with which petitioner was accused. This made petitioner's presence constitutionally

imperative, because it involved the complainant's substantive testimony about the incident, which

provided critical insight into her upcoming testimony before the jury and thus had a "relation,

reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v.

17

Massachusetts, 291 U.S. at 105-107. Indeed, the Supreme Court recognized in Kentucky v Stincer, 482 U.S. 730, 746 n. 20 (1987), that if a hearing is conducted that discusses "upcoming substantive testimony," that proceeding "might bear a substantial relationship to a defendant's opportunity to better defend himself at trial."

The District Court correctly acknowledged that if a presence violation sufficiently undermines the integrity of the trial process, it may constitute structural error. R & R at 26. Whether it qualifies as such depends on "the particular nature, context, and significance of the violation." Grayton v. Ercole, 691 F.3d at 178, quoting from Yarborough v. Keane, 101 F.3d 894, 897 (2d Cir. 1996). However, the District Court concluded incorrectly that the violation here did not satisfy these criteria, and it concluded that if there was error, it was "plainly harmless."

The Court failed to consider the substantial impact of the violation on Mr. Contreras' ability to assist in his own defense, which demonstrates that the violation of his right to be present was structural error. The prosecution's case depended on the credibility of the complainant. Petitioner was denied an opportunity to hear a preliminary version of the complainant's trial testimony, and to provide potentially dispositive information to his attorney about the significance of the Note, which could well have called into question the credibility of the complainant's entire narrative. For the same reason, even assuming the applicability of harmless error, the violation of petitioner's right to be present "had substantial and injurious effect or influence in determining the jury's verdict.," Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), and hence cannot be dismissed as harmless.

*         *         *         *         *         *

Independent of each other, each of these constitutional violations require that the writ be granted. Considered in conjunction, their impact on the defense was massive, and cannot be overstated. A potentially vital piece of evidence was unjustifiably withheld from petitioner, the

18

court prevented his attorney from talking about it with him throughout the entire trial, and the court did not allow him to be present at proceedings that would have enabled him to assist his attorney in evaluating its significance. The court's errors deprived him of his right to counsel and to be present at material proceedings, and unreasonably applied Supreme Court precedent. And it is certainly clear that, at the very least, reasonable judges would find the district court's resolution of the constitutional claims to be debatable or wrong, and a Certificate of Appealability therefore should issue.

## CONCLUSION

**FOR THE REASONS STATED HEREIN, A CERTIFICATE OF APPEALABILITY SHOULD BE GRANTED.**

Respectfully submitted,

ANDREW C. FINE (AF 7653)
The Legal Aid Society,
Criminal Appeals Bureau
199 Water Street, 5th Floor
New York, New York 10038
Telephone: (212) 577-3300

Dated: New York, New York
May 3, 2013

19